## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | No. 5:22-cr-0386 |
| | : | |
| ANTHONY DRAPER | : | |

---

### O P I N I O N
**Defendant's Motion to Suppress, ECF Nos. 21 & 23 – Denied**

**Joseph F. Leeson, Jr.**                                                          **May 30, 2023**
**United States District Judge**

### I.        INTRODUCTION

Before the Court is Defendant Anthony Draper's Motion to Suppress Evidence.[1]

While on duty, Officer Balatgek observed Draper smoking a hand-rolled cigar while Draper was driving a vehicle through downtown Allentown. The officer followed Draper and saw him make a left-hand turn without using his turn signal. Due to heavy police radio traffic, the officer continued to follow Draper instead of pulling him over immediately.

Once radio traffic subsided, the officer activated her cruiser's lights and pulled Draper over. Draper admitted to the officer that he had a marijuana blunt inside the car and gave it to the officer.

At that point, the officer asked Draper to step out of his vehicle. As Draper exited the vehicle, a second officer saw what appeared to be a bag of cocaine located on Draper's person. Officer Balatgek performed a brief pat down of Draper and found a knife in Draper's pocket. After the officers took the knife and the suspected cocaine from Draper, they arrested him.

---

[1]        Draper filed an original motion to suppress and then filed a supplement to that motion. *See* ECF Nos. 21 & 23. Draper's filings mention the suppression of evidence *and* statements, but Draper withdrew his request to suppress statements at the suppression hearing. For that reason, the Court addresses only the suppression of evidence in this Opinion.

The officers then searched Draper's vehicle and found more drug paraphernalia. Draper was taken to police headquarters where officers performed a strip search of Draper and found another bag of cocaine on his person. Officers later executed a search warrant on Draper's vehicle and found a handgun, more marijuana and cocaine, and other drug paraphernalia. Draper was charged with possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime.

Draper argues that all evidence, including the firearm, drugs, and drug paraphernalia should be suppressed because the stop, searches, and arrest were all unlawful. The government opposes the Motion. Because the officer had reasonable suspicion that Draper had violated a traffic law, and because the officer had probable cause to investigate further and to make an arrest, the Court denies Draper's Motion.

## II.    BACKGROUND

### a. Procedural History

A grand jury returned a two-count indictment charging Draper with a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (possession with intent to distribute a controlled substance), and a violation of 18 U.S.C. § 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime). Draper filed a Motion to Suppress Evidence and later filed a supplement to that Motion. *See* ECF Nos. 21 & 23. The government filed a response in opposition. *See* ECF No. 25.

On March 29, 2023, the Court held a suppression hearing, during which the government offered evidence and presented three witnesses: Kaila Balatgek; Jeffrey Tanner; and Anthony Campanell. Draper also testified at the suppression hearing. At the conclusion of that hearing, the Court ordered the parties to file proposed findings of fact and conclusions of law. Both parties filed proposed findings of fact and conclusions of law. *See* ECF Nos. 33 & 35.

### b.  *Findings of Fact*

Officer Kaila Balatgek is employed with the City of Allentown Police Department and has

been so employed for over two years.  *See* Notes of Testimony at page 5, Evidentiary Hearing,

March 29, 2023, (hereinafter "N.T."), ECF No. 31. Officer Balatgek was previously employed as a

police officer with the City of Reading and the Pittsburgh Bureau of Police for five and one-half

years. *Id*. at 6. Officer Balatgek completed police academy courses in both Reading and Pittsburgh.

*Id*.  The testimony of Officer Balatgek is credible and accepted as fact.[2]

On January 13, 2022, Officer Balatgek was working as an officer for the Allentown Police

Department and was assigned to the day shift, 6:15 a.m. to 2:15 p.m. *Id*. Officer Balatgek was in

uniform and assigned to a marked patrol vehicle. *Id*. Officer Balatgek's patrol vehicle was equipped

with an in-car camera which records both the exterior of the patrol vehicle as well as the rear seat of

the patrol vehicle. *Id*. at 7. She was also equipped with a body camera. *Id*. On January 13, 2022,

both Officer Balatgek's in-car camera and body camera were operational. *Id*. The cameras are

always rolling, but they are not always recording; they are "triggered" to record anytime Officer

Balatgek activates her cruiser's lights. *Id*. at 15. Specifically, once the cruiser's lights are turned on,

the cameras start recording video footage, without any audio, going back thirty seconds prior to the

lights' activation. *Id*. In addition to video, audio then starts recording approximately thirty seconds

into the recording, or at about the time when the cruiser's lights were activated. *Id*.

On January 13, 2022, at approximately 1:40 p.m., Officer Balatgek was leaving the

Allentown Police Department headquarters located at 425 Hamilton Street, Allentown,

Pennsylvania. *Id*. at 7. Officer Balatgek was the only police officer inside of her patrol vehicle. *Id*.

---

[2]      The Court makes this determination after having listened to the testimony of Officer
Balatgek and having viewed her demeanor.  The Court finds, *inter alia*, that Officer Balatgek had a
good recollection of the events, her account was believable, and her testimony was consistent
throughout and with other testimony and evidence.  Draper's challenges to her credibility, which are
unpersuasive, are discussed in detail below.

at 8. She drove westbound on Court Street and approached the stop sign at the intersection of North

5th Street and Court Street. *Id*. at 7. Officer Balatgek stopped at the stop sign at Court Street and

waited to make a southbound turn onto North 5th Street. *Id*. at 8.

Officer Balatgek observed a silver Chevrolet Sonic travelling southbound on North 5th

Street directly in front of her. *Id*. Officer Balatgek immediately observed the driver of the vehicle

and identified Draper. Officer Balatgek observed Draper smoking a brown hand-rolled cigar. *Id*.

Based on her training and experience, Officer Balatgek believed that the cigar contained marijuana.

*Id*.

Officer Balatgek made eye contact with Draper. *Id*. at 9. Draper removed the suspected

marijuana cigar from his mouth and placed it in the area of the center cup holder inside of his

vehicle. *Id*. Then he put on his seatbelt. *Id*.

Draper was the only occupant of the silver Chevrolet Sonic. *Id*. Officer Balatgek turned

southbound onto North 5th Street and was positioned behind Draper. *Id*. Draper made a left turn

from North 5th Street onto Hamilton Street and travelled eastbound. *Id*. When Draper turned

eastbound onto Hamilton Street, he failed to utilize his left turn signal. *Id*.

Officer Balatgek attempted to conduct a traffic stop but was unable to do so because of

heavy police radio traffic. *Id*. Officer Balatgek was trained to always call out traffic stops before

activating lights and sirens for safety reasons. *Id.* at 10.  She explained that "a foot pursuit, a

shootout, something dangerous in that course of time [could] take place." *Id.*  The need for safety

was especially at issue with the stop of Draper because Officer Balatgek had observed not only a

traffic violation, but possibly a criminal offense as well, namely the illegal possession of marijuana.

*Id.* at 78-79. Unable to call out a vehicle stop, as she was trained to do and as was her practice,

Officer Balatgek continued to follow Draper. *Id*.

Draper next made a left-hand turn utilizing his turn signal onto North 4th Street and travelled northbound. *Id*. at 11. Office Balatgek followed Draper to the 300 block of North 4th Street. Radio traffic cleared up and Officer Balatgek was able to call out the traffic stop to the communication center. *Id*. Draper made a left-hand turn onto West Chew Street. *Id*. Officer Balatgek activated her lights and siren, which triggered her cameras to begin recording back thirty seconds prior to the lights' activation, and Draper pulled over on West Chew Street. *Id*. Since Officer Balatgek followed Draper for longer than thirty seconds after she witnessed him make a turn without using his turn signal, that traffic violation was not recorded on camera. Indeed, neither of Officer Balatgek's cameras recorded any traffic violation Draper made.

Draper pulled his vehicle over in front of St. Luke's Sacred Heart Hospital. Draper parked his vehicle blocking the exit to the hospital's drop off bay. *Id*. at 12. Draper's vehicle was illegally parked in front of the hospital drop off bay. *Id*. at 17. Officer Balatgek stopped her patrol vehicle behind Draper's vehicle, exited, and approached Draper's vehicle. *Id*.

Officer Balatgek noticed an overwhelming odor of burnt marijuana from inside of Draper's vehicle. *Id*. at 19. She also observed a backpack on the front passenger side floorboard inside Draper's vehicle. *Id*. Officer Balatgek advised Draper of the traffic violation and requested his driver's license, registration, and proof of insurance. *Id*. at 17. Draper gave his driver's license, registration, and proof of insurance. *Id*. Officer Balatgek returned to her patrol vehicle to run Draper's information. *Id*. at 18.

Draper's driver's license, registration, and proof of insurance were found to be valid. *Id*. Around this time, Officer Jeffrey Tanner of the Allentown Police Department arrived on scene and took a position at the front passenger side of Draper's vehicle. *Id*. at 18, 84.  Officer Balatgek reapproached Draper's vehicle and observed that Draper had moved the backpack from the front passenger side floor to the rear seat of the vehicle. *Id*. at 19. Officer Balatgek advised Draper that

she had seen him with a marijuana blunt and that she could smell burnt marijuana in his vehicle. *Id*. at 19–20. She recognized the odor of burnt marijuana from her training and experience. *Id*. at 20. She was also concerned about the movement of the backpack; based on her training and experience, she believed that Draper may be trying to conceal something located inside of the backpack. *Id*. at 24.

Draper admitted that he smokes marijuana but stated that he was not smoking it at that time. *Id*. at 25. Draper, however, also admitted to Officer Balatgek that he had a marijuana blunt inside of his car. *Id*. at 26. Draper handed Officer Balatgek a cup containing a large marijuana blunt and several smaller blunts that had been smoked. *Id*. at 27. Officer Balatgek asked Draper to exit his vehicle with the intent of placing him under arrest for possession of marijuana. *Id*. at 28.

Draper exited his vehicle and Officers Balatgek and Tanner, for officer safety, patted Draper down to check for weapons, and conducted a search incident to arrest. *Id*. Officer Balatgek located a knife in Draper's pocket. *Id*. at 29. As Officer Balatgek patted Draper down, Officer Tanner saw a bag of crack cocaine inside of Draper's left sweatpants' pocket. *Id.* The bag of crack cocaine inside Draper's left sweatpants' pocket was in plain view of Officer Tanner. *Id.* Once Officer Tanner removed the bag of crack cocaine, the officers placed Draper in handcuffs. *Id*. Draper struggled with both officers as soon as he was handcuffed. *Id.* at 41. He flailed around, screamed, and refused to move. *Id*. Officer Balatgek had to request additional units to move Draper. *Id.* With the extra assistance, Officer Balatgek placed Draper in the rear seat of a nearby patrol vehicle. *Id*. at 30.

The Allentown Police Department maintains a written policy addressing the towing of vehicles and the inventory search of those towed vehicles. *Id*. at 31. The purpose of the Allentown Police Department vehicle inventory search is to document anything of value inside of the vehicle prior to the vehicle being towed. *Id*. at 32.

Officer Balatgek called for a tow truck to remove Draper's vehicle from in front of the drop off bay. *Id*. Officer Balatgek conducted an inventory search of Draper's vehicle. *Id*. Officer Balatgek was not able to access the main compartment of the backpack, because it was secured with a combination lock. *Id*. Officer Balatgek accessed the front pocket of the backpack and located an operable digital scale and a green zip-top bag that commonly contains marijuana. *Id*. at 33. Officer Balatgek left the backpack in Draper's vehicle until she obtained a search warrant for the vehicle. *Id*.

Ross/A1 Towing is utilized by the Allentown Police Department to tow and impound vehicles. *Id*. at 36. Draper's vehicle was towed to Ross/A-1 Towing's secured impound lot. *Id*. at 37. Draper was transported to Allentown Police headquarters and placed in a holding cell. *Id*. at 38. Officer Balatgek contacted Draper in the holding cell and read Draper his Miranda rights. *Id*. at 39. Draper did not make any statements to Officer Balatgek. *Id*. at 40. Pursuant to Allentown Police Department policy, a visual strip search was conducted of Draper in the holding cell. *Id*. at 89–90. Also pursuant to the policy rule that strip searches be performed in the presence of only those who are necessary to the search, one officer supervised the search, without visually watching Draper, while a second male officer visually observed Draper. *See* Gov. Ex. 11 pg. 12. Draper was the only person in the holding cell at the time, and officers did not touch him during the search. *See* Gov. Ex. 3. Nor did officers search Draper's body cavities. *Id*. Draper was asked to undress, at which point the observing officer saw an additional bag of cocaine located in the waistband of Draper's underwear. N.T. at 90. The officer recovered the cocaine and Draper was allowed to put his clothes back on. *Id*.

After the strip search, Officer Balatgek applied for a search warrant for Draper's vehicle. *See* Gov. Ex. 4. In that application, Officer Balatgek included an affidavit, in which she swore, among other things, that when she re-approached Draper's vehicle after checking his ID and

registration, a backpack had been moved from the front passenger side of the vehicle to the backseat of the vehicle. *Id*. She also stated in the affidavit that she could smell burnt marijuana from inside the vehicle and that Officer Tanner observed a suspected bag of crack cocaine on Draper's person. *Id*. Finally, Officer Balatgek stated in the affidavit that additional cocaine and drug paraphernalia was found on Draper's person after performing a strip search at headquarters. *Id*. The application for a search warrant was granted, and it was executed that same day. *Id*.

During the search, Officer Balatgek located a Glock 26 9mm (serial number BMXV464) handgun in the main compartment of the backpack. *Id*. at 51. The Glock 26 was loaded with ten rounds. *Id*. The Glock 26 handgun was examined and found to be operable. *Id*. at 63. Officer Balatgek also located in the backpack the following items: (i) a black ski mask; (ii) black rubber gloves; (iii) purple zip-top bags commonly used to package marijuana; (iv) unused baggies (v) a green zip-top bag stamped "Ether" containing marijuana, (vi) a black bag containing approximately five grams of crack cocaine; (vii) a bag containing new black and green zip-top bags stamped "Ether"; (viii) a magazine containing ten rounds of brass Hornady bullets; (ix) a magazine containing seventeen rounds of brass Hornady bullets; (x) a clear sandwich bag containing new tie-dyed zip-top bags; (xi) a clear sandwich bag containing crack cocaine; and (xii) two operable digital scales *Id*. at 51–52.

Upon the completion of the search warrant, Officer Balatgek completed a receipt inventory for the items seized during the execution of the search warrant. *Id*. at 45. The drugs seized during the searches were submitted to the Pennsylvania State Police Regional Laboratory for forensic analysis. Gov. Ex. 9. The results confirmed that the seventy-three small, knotted bags seized from Draper's sweatshirt pocket contained crack cocaine. *Id*. The forty-three small, knotted bags seized from Draper's underwear also contained crack cocaine. *Id*. Officer Balatgek checked to see if Draper had a valid license to carry a firearm, and he was found not to have one. N.T. 63.

### III.     DISCUSSION

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Id*. It is not disputed in this case that the officers stopped, seized, and arrested Draper and performed searches all without a warrant.

The government must therefore establish that the stop, seizure, arrest, and searches performed were lawful. To meet its burden, the government admitted evidence and called three witnesses, including Officer Balatgek, to give testimony at the suppression hearing. Draper himself also bore testimony at the suppression hearing. In sum, Draper testified that he had not been smoking marijuana and that he had not committed any traffic violations on the day Officer Balatgek pulled him over. Draper contends that the government has not met its burden and that the evidence recovered should be suppressed because the stop, seizure, arrest, and searches were all unlawful.

#### a.   *Officer Balatgek's testimony was credible.*

The credibility of witnesses is determined by the trial judge at suppression hearings. *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007). The court acts as the finder of fact and may accept or reject any or all of the testimony given at a suppression hearing. *United States v. Woodson*, No. 2:15-CR-00088, 2017 WL 44859, at *2 (W.D. Pa. Jan. 4, 2017).

Officer Balatgek testified that she witnessed Draper commit multiple traffic violations; in contrast, Draper testified that he did not commit any traffic violations. Draper points out four reasons that, according to him, call Officer Balatgek's credibility into question.

First, Draper questions why Officer Balatgek did not pull him over immediately upon seeing him smoking what appeared to be a blunt and observing two traffic violations. Initially, the Court

notes that this argument is misleading for two reasons.  First, "none of the specific provisions of the seat belt laws permit a police officer to stop a motor vehicle solely because one of its occupants over the age of four is not wearing a seat belt."  *See Commonwealth v. Henderson*, 663 A.2d 728, 736-37 (Pa. Super. 1995) ("hold[ing] that no violation of the Motor Vehicle Code occurs when a motor vehicle's driver . . . fails to fasten his or her seat belt until the driver simultaneously violates another provision of the Motor Vehicle Code").  Accordingly, the fact that Draper was not wearing a seatbelt did not, in itself, justify the stop.  Second, although Officer Balatgek observed Draper smoking what she believed to be marijuana and expected the stop might also reveal a criminal offense, she did not smell the odor of burnt marijuana until after the traffic stop and offered no testimony that she initiated the stop for this reason.[3] Any attack to her credibility on this point is therefore misplaced. Consequently, the credibility issue is simply why Officer Balatgek did not stop Draper immediately after seeing him make a left turn without using his turn signal.

Officer Balatgek sufficiently explained the reason for the delay; that is, radio traffic was extremely heavy, and, for safety reasons, she did not want to initiate a traffic stop until she could first call it in. The short delay in initiating the stop also explains why the cameras did not record any traffic violations, because the violations had occurred more than thirty seconds prior to the activation of the cruiser's lights. Draper points out that Officer Balatgek did not mention the heavy radio traffic in her written report of the incident. However, the absence of this information does not contradict her testimony and, further, it is expected that testimony will often include more details than in a summary incident report. *See United States v. Shaka Karriem*, No. 07-706 (HAA), 2008 U.S. Dist. LEXIS 98153, at *8 (D.N.J. Dec. 4, 2008) (finding "the testimony of the officers to be credible and compelling" despite the failure of the incident report to specify that the officer saw the

---

[3]     This Court offers no opinion as to whether Officer Balatgek's observation of Draper smoking a blunt, alone, would have justified the stop.

gun in the defendant's hand before the defendant attempted to hide it under the mat of the car, and

noting that "testimony necessarily provided a fuller depiction of the events than

the summary provided in the Incident Report"). The Court accepts Officer Balatgek's explanation

for the delay and does not find that her failure to include this detail in her written report affects her

credibility.

Second, Draper takes issue with the fact that Officer Balatgek did not check to see whether

there are any street cameras that captured the incident that could corroborate her version of events.

The Court does not find this to be consequential. There is no requirement for Officer Balatgek to

perform specific investigative techniques such as collecting footage from street cameras or

canvassing the area for potential witnesses to the incident. Officer Balatgek bore testimony that was

based on her own perception. The Court considered her testimony in addition to the other evidence

admitted, and the Court determines that to be enough to support the findings of fact contained in

this Opinion even absent additional corroborating evidence.

Third, Draper argues that "there is no rational reason why Officer Balatgek would not have

charged [him] with a DUI if she indeed observe[d] him smoking Marijuana and smelled burnt

Marijuana in the car." The Court disagrees. There are any number of reasons why Draper was not

charged with a DUI. However, any guess as to what the reason is would be mere speculation

because there was no evidence admitted that would shed light on this question. Regardless, charging

decisions are in the discretion of the prosecutor and there is no requirement that every possible

crime be charged. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) (holding that "whether

to prosecute and what charge to file or bring . . . are decisions that generally rest in the prosecutor's

discretion"). From the Court's point of view, the fact that Draper was not charged with a DUI does

not affect Officer Balatgek's credibility.

Fourth, Draper argues that Officer Balatgek's testimony was inaccurate because she testified that she activated her lights on West Chew Street but that the video exhibit shows her lights being activated on the 300 block of North 4th Street. When questioned about this discrepancy, Officer Balatgek explained that she activated her lights "just before we turn onto Chew Street. So that is still considered the 300 block on 4th Street. . . , at which time [Draper] pulled onto Chew Street." N.T. 69-70. Even assuming that Officer Balatgek mixed up the streets, her explanation was reasonable, and that one minor inaccuracy does not cause the Court to question the entirety of her testimony. Having determined that Officer Balatgek is a credible witness and having adopted her testimony bearing on significant facts, the Court discusses the incident and determines that each stage of the encounter between Draper and the officers was lawful.

### b. The traffic stop was based on reasonable suspicion.

An officer may make a traffic stop if they have reasonable suspicion that a traffic violation has occurred. *See United States v. Delfin-Colina*, 464 F.3d 392 (3d Cir. 2006). "Where reasonable suspicion for the traffic stop is lacking, the evidentiary fruits of the traffic stop must be suppressed." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012). Pretextual traffic stops do not run afoul of the Fourth Amendment so long as they are supported by reasonable suspicion of a legitimate traffic violation. *See id*.

Draper argues that Officer Balatgek did not have reasonable suspicion that a traffic violation had occurred, because, according to him, he did not commit any traffic violations that day and because he had not smoked marijuana that day. However, Officer Balatgek witnessed him make a turn without using a turn signal, which is a violation of 75 Pa. C.S.A. § 3334. This observation, alone, is sufficient to justify the traffic stop. *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."). The reasonable suspicion

needed to justify a traffic stop "is a generally undemanding standard," which has certainly been met in this case. *See Ramos*, 464 F.3d at 397.

### c.  *The investigation after the stop was supported by reasonable suspicion.*

If an officer develops reasonable suspicion of a crime after making a traffic stop, then they may extend the stop to conduct a reasonable investigation to confirm or dispel the officer's suspicions. *See Florida v. Royer*, 460 U.S. 491, 498 (1983); *see also Berkemer v. McCarty,* U.S. 420, 439 (1984).

Officer Balatgek smelled burnt marijuana coming from inside Draper's vehicle after she pulled him over. The smell of burnt marijuana, especially when coupled with Officer Balatgek's observation of Draper smoking a blunt while driving, creates reasonable suspicion of a crime, which more than justified Draper's ongoing detention and Officer Balatgek's questions to Draper about marijuana. *See United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006); *Commonwealth v. Mercedes*, 285 A.3d 948 (Pa. Super. Ct. 2022) (holding that because the Medical Marijuana Act[4] does not permit the smoking of marijuana, the officer had reasonable suspicion to justify an investigative detention after observing an individual smoking a "cigarillo type object" and smelling the odor of burnt marijuana); *Commonwealth v. Barr*, 266 A.3d 25, 47 (Pa. 2021) (concluding that because it still is illegal in Pennsylvania to smoke marijuana while driving, "it is not hard to envision a situation where the smell of marijuana could supply an officer with probable cause to believe a driver . . . has violated the law"). Moreover, the investigation was not longer than was necessary to confirm or dispel the officer's suspicions; after checking Draper's identification and registration, Officer Balatgek returned to Draper's vehicle where she asked him whether he had been smoking marijuana and whether he had anything illegal in his vehicle. After initially denying

---

[4]    Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101-10231.2110; 35 P.S. § 10231.303 (providing a limited exception to the prescribed use of medical marijuana).

that he had been smoking, Draper admitted to having a blunt in the vehicle and handed Officer

Balatgek a cup from the console of his vehicle that contained the remnants of several smoked

blunts. The entire exchange lasted approximately three minutes. *See* N.T. 1911–13 (Officer

Balatgek returned to Draper's vehicle around 13:41:10.); *see also id.* at 27:8–14 (Draper turned over

marijuana blunts around 13:44:00.). Accordingly, the short investigation after the stop was lawful.

### d. The arrest was justified by probable cause.

An arrest is justified by probable cause that a crime has occurred. Probable cause to arrest

exists when the facts and circumstances within the arresting officer's knowledge are sufficient in

themselves to warrant a reasonable person to believe that an offense has been or is being committed

by the person to be arrested. *Kelly v. Jones*, 148 F. Supp. 3d 395, 400 (E.D. Pa. 2015). Here, Officer

Balatgek had probable cause to believe that a crime had occurred because she saw Draper smoking

what appeared to be a blunt, she smelled burnt marijuana coming from Draper's vehicle, Draper

was the sole occupant of the vehicle, Draper admitted to having a blunt in his vehicle, and Draper

turned over a makeshift ashtray that contained several smoked blunts. Moreover, Officer Tanner

saw, in plain view, a bag of crack cocaine in Draper's pocket. The officers therefore had probable

cause that Draper had committed several crimes, making his arrest lawful. *See* 35 P.S. § 780-

113(16) (prohibiting the possession of a controlled substance); 35 P.S. § 780-113(31) (prohibiting

the possession of a small amount of marijuana for personal use); 35 P.S. § 780-113(32) (prohibiting

the possession with intent to use drug paraphernalia).

Even if Draper had not been under arrest, Officer Balatgek's request for Draper to exit his

vehicle was lawful because a police officer may exercise reasonable superintendence over a car and

its passengers during a traffic stop, including ordering suspects to exit a vehicle without needing

any particularized suspicion. *See United States v. Bonner*, 363 F.3d 213 (2004); *see also*

*Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977).

### e.   *The pat-down was lawful.*

Searches without a warrant are per se unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). However, there are exceptions. "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id*. For purposes of officer safety, and to preserve evidence, a lawful search of the arrestee's person and the area within the arrestee's control may be made after a lawful arrest. *Id*. at 339.

The Court has already determined that Draper's arrest was lawful. It follows logically that the pat-down was also lawful. *See id.*  An officer may also lawfully pat-down a suspect to search for weapons even before an arrest if the officer has reason to believe that he/she is dealing with an armed and dangerous individual. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). Accordingly, even if Draper had not been under arrest, the pat-down still would have been lawful because, as Officer Balatgek testified, in addition to searching Draper incident to arrest, she performed the pat-down to search for weapons and ensure that Draper did not pose a danger to herself or her partners. *See* N.T. 28:19–21. Officer Balatgek's belief that Draper might have a weapon was reasonable in light of, *inter alia*, her observation that Draper had moved a backpack from the front passenger side floor to the rear seat of the vehicle. *See Commonwealth v. Parker*, 248 A.3d 510 (Pa. Super. Ct. 2021) (concluding that the officer was permitted to remove the vehicle occupants to conduct a search for weapons because the defendant's actions of reaching into the backseat area, where he may have been reaching for or attempting to hide a weapon, presented a danger to the officer). Her suspicions were confirmed because Draper had a knife in his pocket. After taking possession of the knife, Officer Tanner continued the pat-down search and located the bag of crack cocaine.

### f.   *The warrantless vehicle and backpack searches were lawful.*

A warrantless search of an automobile is lawful if there is probable cause that the vehicle contains evidence of a crime. *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014)

(discussing the automobile exception to the warrant requirement). This includes searching inside items, such as bags, that may be in the vehicle. *See United States v. Matthews*, 597 F. Supp. 3d 694, 703 (D.N.J. 2022). Additionally, "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983).

Here, there was probable cause that Draper's vehicle contained evidence of a crime for similar reasons that there was probable cause for his arrest. That is, Officer Balatgek smelled burnt marijuana coming from inside the car and Draper handed several blunts of marijuana that had been in the car to Officer Balatgek. *See United States v. Green*, 897 F.3d 173, 186 (3d Cir. 2018). Additionally, Draper was found to have crack cocaine on his person and suspiciously moved the backpack from the front passenger side floor to the rear seat of the vehicle, indicating that he may have been trying to conceal additional contraband inside. The warrantless search of Draper's vehicle was therefore lawful. *See United States v. Lackey*, Nos. 20-2977, 20-2978, 2022 U.S. App. LEXIS 2964, at *6-7 (3d Cir. Feb. 2, 2022) (concluding that the odor of marijuana emanating from the vehicle, alone, provided probable cause to conduct a search of the vehicle, and that probable cause was further supported by the defendants' nervous behavior during the stop and the presence of marijuana found on his person following a lawful search incident to arrest). The search of the backpack was also lawful because evidence of the suspected crime—drugs—could have been (and was) in the backpack. *See United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). The inventory searches were also lawful as conducted pursuant to department policy. *See United States v. Matthews*, No. 09-612, 2010 U.S. Dist. LEXIS 66925, at *22-23 (E.D. Pa. July 1, 2010) (denying suppression of items recovered in a backpack that was searched pursuant to the police department's inventory policy

following a person's arrest). Draper's suggestion that Officer Balatgek strategically pulled him over in a location where his vehicle would have to be towed (the hospital drop-off bay) is unsupported because after her lights and siren were activated, Draper "continued driving approximately a fourth of a block before he stopped." N.T. 69-70.

### g. *The strip search was lawful.*

Whether a strip search violates an individual's Fourth Amendment right is fact specific; to be lawful, it (1) "must be justified by at least a reasonable suspicion that the arrestee is concealing contraband," *United States v. Clemons*, No. CRIM. 08-28, 2010 WL 597992, at *4 (W.D. Pa. Feb. 17, 2010) (cleaned up), and (2) it must be reasonable under the circumstances, s*ee Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."). Both requirements are satisfied in this case.

Reasonable suspicion for a strip search "may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Allison v. GEO Grp., Inc.*, 611 F. Supp. 2d 433, 452 (E.D. Pa. 2009) (cleaned up). Though Draper's prior arrest record, if there is one, is not in evidence, the two other factors, which are non-exhaustive, support a finding of reasonable suspicion.

For example, Draper's offense—possession with intent to distribute a controlled substance—is of the nature that could support a finding of reasonable suspicion for a strip search. *See id.* at 454 (implying that offenses involving drugs and weapons often involve defendants hiding contraband). Evidence of that crime, namely drugs, are small enough that they can be hidden in pockets, waistbands, or other nooks and crannies on a person. Indeed, it is common for individuals dealing in illegal drugs to hide drugs on their person. Even before the strip search, Officer Tanner discovered one bag of cocaine on Draper's person, which suggested that there could be more.

Draper's conduct also supports a finding of reasonable suspicion for a strip search. That is, he surreptitiously moved a backpack that officers suspected, and later confirmed, contained a firearm and illegal drug paraphernalia, which buttressed the belief that Draper could have additional contraband elsewhere. Draper's noncompliance after his arrest also added to the suspicion that he might have more to hide, especially on his person because he violently resisted complying with the officers. Under the totality of the circumstances, it was therefore reasonable for officers to suspect Draper could have additional weapons or illegal drugs hidden elsewhere on his person, justifying the strip search.

In addition to there being reasonable suspicion that Draper may have hidden contraband on his person, the strip search was also reasonable under the circumstances. When determining whether a strip search was performed in a reasonable manner, courts "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. 520, 559 (1979). Draper's strip search was not overly invasive; it lasted just long enough for him to undress and give the observing officer a chance to look and see whether Draper was concealing any additional contraband. As soon as that was complete, the observing officer told Draper he could get "dressed again." N.T. at 91. In addition, the strip search took place in a secure location where no one other than the observing officer could see Draper. Finally, the observing officer did just that—observe. The officer did not touch Draper or conduct a body cavity search. With all those things considered, the strip search was performed in a reasonable manner.

In sum, because the strip search was supported by reasonable suspicion that Draper had weapons and/or illegal drugs on his person, and because it was performed in a reasonable manner, it was lawful.

h.  *The warrant to search Draper's vehicle was valid.*

To be valid, a search warrant must be supported by probable cause. *See* U.S. Const. amend.

IV. Probable cause exists when, "viewing the totality of the circumstances, 'there is a fair

probability that contraband or evidence of a crime will be found in a particular place.'" *United*

*States v. Jones*, 572 F. Supp. 2d 601, 612 (W.D. Pa. 2008) (*quoting Illinois v. Gates*, 462 U.S. 213,

238 (1983)). To determine whether probable cause exists to support a search warrant, courts look

only within "the four corners" of the supporting affidavit of the application for a warrant. *See*

*United States v. Beatty*, 437 F. App'x 185, 187 (3d Cir. 2011).

This Court, in applying the automobile exception, has already concluded that there was

probable cause to search Draper's vehicle.  Because the search warrant affidavit included the same

essential facts, it too was supported by probable cause for the reasons previously discussed.

Moreover, "[w]hen considering a suppression motion, the court should first consider the

officer's good faith in relying on the warrant, before turning to whether there was probable cause to

support the issuance of the warrant." *United States v. Phan*, 628 F. Supp. 2d 562, 568 (M.D. Pa.

2009). An officer's reliance on a warrant is unreasonable when (1) the magistrate judge issued the

warrant in reliance on a deliberately or recklessly false affidavit, (2) the magistrate judge abandoned

his judicial role and failed to perform his neutral and detached function, (3) the warrant was based

on an affidavit so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable, or (4) the warrant was so facially deficient that it failed to particularize the

place to be searched or the things to be seized. *United States v. Phan*, 628 F. Supp. 2d 562, 568

(M.D. Pa. 2009). "A presumption of validity attaches to an affidavit submitted in support of a

search warrant, and a warrant will only be invalidated if the defendant proves by a preponderance of

the evidence (1) that the office knowingly and deliberately, or with reckless disregard for the truth,

made false statements or omissions that create a falsehood in applying for a warrant; and (2) that

those statements or omissions were material to the finding of probable cause." *United States v. Phan*, 628 F. Supp. 2d 562, 569 (M.D. Pa. 2009).

In this case, there is nothing to suggest that Officer Balatgek's reliance on the search warrant was unreasonable. The warrant was not issued in reliance on a deliberate or recklessly false affidavit; the affidavit essentially summarizes the findings of fact that the Court makes in this Opinion. There is no evidence that the search warrant was issued by someone who failed to perform their neutral and detached function. The affidavit itself provides a thorough statement of facts supporting a fair probability that contraband or evidence of a crime would be found in Draper's vehicle. Finally, the warrant was not facially deficient; it particularized the exact "place" to be seized—Draper's vehicle. Other than Draper's own testimony, which this Court did not accept as fact, he has not provided any evidence to invalidate the search warrant. The search of Draper's vehicle and the backpack inside the vehicle was therefore lawful.

## IV.    CONCLUSION

The Court finds that Officer Balatgek was a credible witness and adopts her testimony. Officer Balatgek had reasonable suspicion that Draper had committed a traffic violation by making a turn without using his turn signal, which justified the stop of his vehicle. After the stop, there was probable cause to arrest Draper for the unlawful possession of marijuana because Officer Balatgek, who had seen Draper smoking a blunt while driving, smelled burnt marijuana coming from Draper's vehicle and was given several smoked blunts from Draper. Additionally, in a lawful search incident to arrest, Officer Tanner saw that Draper had a bag of cocaine on his person. For these reasons, the nature of Draper's offenses, and Draper's behavior following arrest, the subsequent strip search of Draper was also lawful. An inventory search of Draper's vehicle and the contents therein was lawfully conducted, after which a valid search warrant was obtained for a further search.

Accordingly, the stop, searches, and arrest in this case were all lawful. The Court therefore denies Draper's Motion to Suppress.

 A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge